Dale K. PAPE, Sr., Plaintiff,

v.

MENOMINEE PAPER COMPANY,
INCORPORATED, Defendant.

No. 2:93–CV–236.

United States District Court,
W.D. Michigan,
Northern Division.

May 6, 1994.

Brent D. Ward, Parry, Murray, Ward & Cannon, Salt Lake City, UT, Lynette L. Erickson, Erickson Law Office, Menominee, MI, for Dale K. Pape, Sr.

Cynthia M. York, Dickinson, Wright, Moon, Van Dusen, et al, Detroit, MI, for Menominee Paper Company, Incorporated.

*OPINION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE*

HILLMAN, Senior District Judge.

### Introduction

This is a citizen's suit brought against Menominee Paper Company, Inc., ("MPC") pursuant to section 7002 of the Federal Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972; section 505 of the Federal Water Pollution Control Act ("the CWA"), 33 U.S.C. § 1365; and section 310 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9659. Plaintiff alleges that defendant's design, construction, operation and closure of its solid waste disposal facility in the Town of Menominee, Menominee County, Michigan, ("MPC Landfill") violated these statutes. Specifically, plaintiff alleges that MPC (1) has violated a standard, regulation, condition, requirement or prohibition that has become effective under Subtitle C of RCRA, which regulates owners and operators of hazardous waste treatment, storage and disposal facilities; (2) has violated dredge and fill permit limitations under the CWA; and (3) has released or threatened to release hazardous substances in violation of CERCLA. Defendant now moves for summary judgment, and plaintiff moves to strike portions of the affidavits of John R. Craig and Anita Doepke filed in support of the motion for summary judgment.

### Background

MPC is a manufacturer and seller of paper products. An Indiana corporation registered to do business in Michigan, it has operated a paper mill in Menominee, Michigan, since the mid–1970's. In 1983, it constructed a 12–acre landfill in its solid waste disposal area in Menominee Township, a few miles from the paper mill. From 1983 through August 1992, Menominee disposed the waste from the paper mill in the landfill. This waste consisted of papermill sludge and coal ash.

MPC's landfill has been regulated since its construction by the Michigan Department of Natural Resources ("MDNR"). During its active life, MDNR inspected the landfill quarterly pursuant to its authority under Michigan's Solid Waste Management Act ("Act 641"), MCL § 299.401. Act 641 grants MDNR enforcement authority in two ways against the owner or operator of a landfill in violation of the act. Either it may bring a civil enforcement action, or it may conduct an administrative proceeding that results in a consent order setting forth a closure schedule or other remedial action. MCL § 299.417. Cooperation with such an order is voluntary, but refusal to comply would result in MDNR resorting to a civil enforcement action.

In the spring of 1992, MDNR found MPC's landfill operations to have caused "soil contamination and degradation of the groundwaters of the state and [to] have a significant potential to cause further degradation of the groundwaters of the state" in violation of Act 641 and the Michigan Water Resources Act, MCL § 323.1, *et seq.* Consent Order p. 2. MDNR began negotiations with Menominee, and a final consent order was signed on September 13, 1993. The consent order prohibits the acceptance of additional solid waste into the landfill and requires closure of the landfill, post-closure care, and remedial investigations and action. Pursuant to the order, Menominee has ceased all disposal operations at the landfill as of September 1, 1992; completed, with approval by MDNR, a groundwater quality assessment workplan for the landfill; and closed and capped the landfill. Continuing compliance with the consent order will require investigatory and

monitoring work by MDNR over the next several years.

It is in this context that plaintiff makes his claims under RCRA, CWA and CERCLA, alleging that MPC is in violation of those statutes in spite of its cooperation with MDNR's administrative scheme. For the reasons below, I find that plaintiff's claims under RCRA and CWA must be dismissed for failure to state a claim and lack of jurisdiction, respectively. Therefore, summary judgment will be granted to the defendant on those claims. As for the CERCLA claim, I find that there remain genuine issues of material fact, and for that reason, summary judgment on the CERCLA claim is denied.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court must decide on a summary judgment motion "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In making this determination, the court must examine the record as a whole by reviewing all pleadings, affidavits and other admissions on file, drawing all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153–54 (6th Cir.1990). If the moving party demonstrates an absence of evidence in support of the nonmoving party's case, the nonmoving party must come forward with specific facts to support its claims and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56. Mere allegations in support of the nonmoving party's case are inadequate; the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."

In the case at bar, defendant requested a stay of discovery before it moved for summary judgment. In the face of vigorous opposition from plaintiff, the court granted the stay. Plaintiff, in support of his opposition to defendant's motion, has submitted an affidavit by his attorney setting forth various facts that the attorney believes he will be able to produce through further discovery. Fed.R.Civ.P. 56(f) provides that:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

I will consider the affidavit in light of this rule, as explained further below.

### RCRA Claim

Pape has claimed that Menominee's operation of its landfill violated Subtitle C of RCRA, 42 U.S.C. § 6921–6939e. Section 6926(b) of the Act provides that where a state administers and enforces its own hazardous waste program, it may obtain EPA approval for the program in order that it may supersede federal enforcement of Subtitle C of RCRA in that state. Michigan has just such a program under its Hazardous Waste Management Act, MCL § 299.501, *et seq.*, and it has received EPA approval. 57 Fed.Reg. 3724 (January 31, 1992). Subtitle C of RCRA is therefore superseded in Michigan. *Midwest Aluminum Mfg. Co. v. General Electric Co.*, 1993 WL 725569 1993 LEXIS 4463 (W.D.Mich. February 5, 1993), and plaintiff concedes that for this reason, his claim under section 6924 of RCRA is barred.

Plaintiff maintains, however, that "not all of [his] RCRA claims are barred via Mich-

igan's state authorization and such claims are properly before this Court." He alleges specifically that defendant has violated 42 U.S.C. § 6945(a), not within Subtitle C of RCRA, and the regulations in Part 257 of Title 40 of the Code of Federal Regulations ("C.F.R."). While Pape did cite 40 C.F.R. § 257 in his complaint, Complaint at ¶ 26, there is no mention of any violation of 42 U.S.C. § 6945(a). Passed "for use under the Resource Conservation and Recovery Act (the Act)," the regulations in Part 257 of the C.F.R. are not intended to be the sole basis of a legal claim. Thus, plaintiff has failed to properly plead any claims under RCRA other than the ones superseded by the Michigan Hazardous Waste Management Act. For these reasons, summary judgment for the defendant is granted on plaintiff's RCRA claim.

■ Finally, plaintiff Pape seeks leave to amend his complaint to include claims under state law analogous to his RCRA claims. Fed.R.Civ.P. 15(a) provides that a party may amend its pleading with leave of court after the initial 20–day period has passed for amendments as a matter of course. The rule instructs that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Trial in this case is set for November, 1994, with a date for mediation to be set by August 5, 1994. As no prejudice would be caused the defendant by plaintiff's amending his complaint at this point in the case, leave to amend is granted.

### CWA Claim

Plaintiff's second of three claims is under the Clean Water Act ("CWA"), 33 U.S.C. § 1365. Defendant maintains that this claim is barred by the consent order that it signed with the MDNR. Plaintiff claims that under *Friends of the Earth v. Consolidated Rail Corp.*, 768 F.2d 57 (2d Cir.1985), and cases following it, a consent order does not bar a citizen's suit under the CWA.

Plaintiff relies upon *Friends of the Earth* for the proposition that a CWA citizen suit is barred only where the federal government "or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to

require compliance with the standard, limitation, or order ..." as provided for by 33 U.S.C. § 1365(b). *Id.* at 62, *quoting,* 33 U.S.C. § 1365(b)(1)(B). In *Friends of the Earth,* the court held that a consent order with a state agency did not bar a citizen suit under the CWA. *Id.* at 62–63.

The CWA's citizen suit provision has been limited, however, since *Friends of the Earth* was decided. By a 1987 amendment to the Act, Congress limited section 1365 by disallowing any civil penalty action under section 1365 for an alleged violation "with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to this subsection ..." 33 U.S.C. § 1319(g)(6)(A)(ii).

The question in the case at bar, therefore, is whether or not Michigan's Water Resources Commission Act, MCL § 323.1, *et seq.* ("WRCA"), under which the MDNR has reached a consent agreement with the defendant, is "comparable" to the CWA within the meaning of 33 U.S.C. § 1319(g)(6)(A).

Courts have interpreted "comparable" in this context rather broadly. In *Gwaltney v. Chesapeake Bay Foundation,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), the Supreme Court construed the CWA citizen suit provision as applying only to ongoing violations. While the Court's holding is not directly applicable here, its reasoning has been relied upon by courts analyzing the issue at hand. In its discussion, the Court explained that "the citizen suit is meant to supplement rather than to supplant governmental [enforcement] action." *Id.* at 60, 108 S.Ct. at 383. It quoted the Act's legislative history: "[C]itizen suits are proper only 'if the Federal, State and local agencies fail to exercise their enforcement responsibility.' " *Id., quoting,* S.Rep. No. 92–414, p. 64 (1971), reprinted in 2A Legislative History of the Water Pollution Control Act Amendments of 1972, p. 1482 (1973).

Interpreting the 1987 amendment limiting the scope of the CWA citizen's suit, the Court of Appeals for the First Circuit looked to the Supreme Court's analysis for guidance.

The primary function of the provision for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State Authorities appear unwilling to act ... Presumably, then, when it appears that governmental action under either the Federal or comparable State Clean Water Acts begins and is diligently prosecuted, the need for citizen's suits vanishes.

*North & South Rivers Watershed Ass'n v. Scituate,* 949 F.2d 552, 555 (1st Cir.1991), *citing, Gwaltney,* 484 U.S. at 60, 108 S.Ct. at 383. In *Connecticut Coastal Fishermen v. Remington Arms,* 777 F.Supp. 173 (D.Conn. 1991), the district court discussed the effect of the 1987 amendment in greater detail:

The pertinent provision of section 1319(g)(6) speaks only of prosecution of "an action under a state law comparable to this subsection." The crucial phrase "in a court" is not found in section 1319(g)(6). Presumably this evinces an intention on the part of Congress to avoid the result in [*Friends of the Earth v.] Consolidated Rail.*

*Id.,* quoting, *Atlantic States Legal Found. v. Tyson Foods, Inc.,* 682 F.Supp. 1186, 1188 (N.D.Ala.1988). In short, the district court found that the amendment to the CWA was intended to expand the bar on citizen suits, making it applicable to consent agreements as well as court actions under comparable laws.

The single case of which I am aware in which a court found a state's regulatory statute to be not comparable to the CWA under § 1319(g)(6)(A), is clearly distinguishable from the case at bar. In *Atlantic States Legal Found., Inc. v. Universal Tool & Stamping Co.,* 735 F.Supp. 1404 (N.D.Ind. 1990), the court found that "for a state law to be considered 'comparable' within the meaning of § 1319(g)(6)(A), the state law must include provisions as to public notice and participation, penalty assessment, judicial review, and other matters comparable to those in § 1319(g)." *Id.* at 1415. The Indiana statute under consideration failed to require notice of public hearings, to provide the public opportunity to comment on or obtain judicial review of its actions, or to set forth the factors to be considered in assessing a penalty. *Id.* at 1416. Because these characteristics differentiated the Indiana statute from the federal Clean Water Act, the court held that the Indiana statute was not "comparable" to the CWA. *Id.*

The instant case is different. The WRCA, unlike the statute at issue in *Atlantic States,* requires that the business of the Commission be conducted at a public meeting, of which public notice must be given. MCL § 323.2. It provides for assessment of penalties and lists the factors to be considered in imposing penalties. MCL § 323.9. Judicial review is available for actions under the statute. *See, e.g., Attorney General v. Thomas Solvent Co.,* 146 Mich.App. 55, 380 N.W.2d 53 (1985). Thus, the WRCA shares essential features with the CWA, and I find it to be "comparable" to the CWA citizen suit provision. Finally, there is no dispute in this case that MDNR's pursuit of a consent order and subsequent enforcement actions have been "diligent prosecution" as required under section 1319(g)(6)(A) for a citizen suit to be barred. In light of these findings and the caselaw disfavoring citizen suits where government enforcement is proceeding according to state law, I find that MDNR has diligently prosecuted an action under a comparable state law, the Michigan Water Resources Commission Act, for the same violations alleged by the plaintiff in his current CWA claim. Therefore, under 33 U.S.C. § 1319(g)(6)(A), Pape's CWA citizen suit claim is barred, and defendant's motion for summary judgment on this claim is granted.

### CERCLA Claim

Finally, plaintiff Pape has claimed that MPC's landfill operations violated CERCLA, 42 U.S.C. § 9601, *et seq.* Specifically, plaintiff alleges that:

55. On information and belief ... hazardous substances have been released, or threatened to be released, and continue to be released, or threatened to be released, from the MPC Landfill into the environment by means of leaching into ground water, surface soils and wetlands and by means of emptying, releasing or other dis-

posal into surface soils within the meaning of CERCLA.

56. On information and belief plaintiff alleges that MPC has failed to give notice of releases or threatened releases in reportable quantities to the national Response Center.

57. Each day of such a release or threatened release constitutes a separate violation of CERCLA and each failure to report constitutes a separate violation of CERCLA.

Complaint, ¶¶ 55–57.

Defendant asserts three defenses to these claims. First, it maintains that, as with the CWA claim, the CERCLA claims are barred by the consent order MPC reached with MDNR. Second, MPC contends that Pape's CERCLA claim must be dismissed, because it is based on past violations only. Third, MPC claims that there have been no releases of hazardous substances in reportable quantities within the meaning of CERCLA.

With respect to the first defense, plaintiff points out that citizen suits are barred under CERCLA only where the EPA is prosecuting an action against the defendant, which it is not doing in the present case. As to the second defense, plaintiff maintains that it need only allege ongoing violations to state a claim under CERCLA, and that with further discovery it will be able to prove the claim. As to the third defense, plaintiff contends that questions of fact preclude a grant of summary judgment on the claim.

42 U.S.C. § 9659 provides that no person may bring an action alleging the violation of a "standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter ... if the President [Environmental Protection Agency] has commenced and is diligently prosecuting an action under this chapter, or under the Solid Waste Disposal Act ... to require compliance with the standard, regulation, condition, requirement, or order concerned ..." *Id.* at section 9659(a)(1), (d)(2).

In this case defendant has made no claim that the EPA is prosecuting an action against it. Therefore, this defense is unsuc-

cessful, and plaintiff's CERCLA claim is not barred on this basis.

As to defendant's second defense, it is clear that an action may not be brought under CERCLA for "a wholly past violation." *Lutz v. Chromatex, Inc.*, 718 F.Supp. 413, 421–22 (M.D.Pa.1989). Whether or not plaintiff has alleged a "wholly past violation," however, is a point on which the parties disagree. Defendant asserts that because there has been no disposal in the landfill since September, 1992, after which the landfill was closed and capped, plaintiff's allegations concern entirely past events. Plaintiff maintains that he need only allege a continuing violation in good faith, and not prove it, in order to overcome a summary judgment motion. MPC, plaintiff contends, must show that Pape's allegations of continuing violations are a sham in order to win summary judgment.

Plaintiff's position is well supported in caselaw. *Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 386; *Natural Res. Defense Council, Inc. v. Outboard Marine Corp.*, 692 F.Supp. 801, 814 (N.D.Ill.1988) ("what must be alleged in good faith is that defendant has not cured the source of discharge violations so that no more violations will occur"). Plaintiff's claims, set forth above, do allege ongoing violations, and I have no reason to believe that they are not made in good faith. For this reason, I find that plaintiff has succeeded in making a claim under CERCLA.

With respect to defendant's third defense, I find that a genuine fact question remains as to whether hazardous substances are being released in reportable quantities from MPC's landfill. Defendant asserts that no such releases have occurred, submitting in support of its claim an employee's affidavit and a deposition statement from a MDNR official. Plaintiff maintains that with further discovery, he will be able to produce evidence that there remain hazardous substances in the landfill, and that a well on the property bordering the landfill is contaminated by pollutants from the landfill. Specifically, he points to the affidavit by his attorney, which states that a deposition of the owner of this well has been noticed but postponed pursuant to the discovery stay.

These allusions to potential evidence do not constitute the specific facts ordinarily required for successful opposition to a summary judgment motion. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56. Fed.R.Civ.P. 56(f) provides, however, as discussed above, that a district court may "refuse the application for judgment" even where the non-moving party is unable to support its opposition to the motion with sufficient facts, as long as the party shows by affidavit why it is unable to produce such facts. In the case at bar, as explained above, discovery was stayed before defendant moved for summary judgment. In light of these circumstances, I find that plaintiff's attorney's affidavit creates a question of fact as to whether or not hazardous substances in reportable quantities are being released from MPC's landfill. Therefore, summary judgment is denied with respect to plaintiff's CERCLA claims.

### MOTION TO STRIKE PORTIONS OF AFFIDAVITS

Plaintiff Pape objects to part of paragraph 8 and all of paragraph 11 of John Craig's affidavit, submitted by defendant in support of its summary judgment motion.

Plaintiff further objects to paragraphs 27, 28, 49, 52 and 53 of Anita Doepke's affidavit.

Because I do not rely on any of these statements in deciding the summary judgment motion, I need not address the admissibility of these portions of the Craig and Doepke affidavits.

Therefore, plaintiff's motion to strike portions of the affidavits by John Craig and Anita Doepke are denied as moot.

### CONCLUSION

For the reasons stated above, summary judgment is granted to the defendant with regard to plaintiff's claims under RCRA and CWA. As to his CERCLA claim, however, a question of fact remains, and summary judgment on this claim is therefore denied.

### ORDER

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** as to plaintiff's RCRA claim.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED** as to plaintiff's CWA claim.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED** as to plaintiff's CERCLA claim.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike portions of the affidavits of John R. Craig and Anita Doepke is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's motion to amend his complaint to include claims under state law analogous to his RCRA claims is **GRANTED.** Plaintiff shall file his amended complaint within 30 days of the date of this order.